Harold G. **HAWKINSON**, Plaintiff,

v.

**BLANDIN PAPER COMPANY**, a corporation, et al., Defendants.

No. 3–71–Civ.–188.

United States District Court,
D. Minnesota,
Third Division.

Sept. 27, 1972.

See also, D. C., 54 F.R.D. 517.

William W. Essling, St. Paul, Minn., for plaintiff.

Craig Gagnon, St. Paul, Minn., for Blandin Paper Co.

William E. Kalar, Grand Rapids, Minn., for Village of Grand Rapids.

## MEMORANDUM AND FINDINGS

DEVITT, Chief Judge.

Suing under the Federal "Protection of Waters" Act, 33 U.S.C.A. §§ 407, 411, the plaintiff restaurant building owner claims damages against the Village of Grand Rapids and the Blandin Paper Company for their allegedly causing depreciation in value of his river front property by depositing waste and refuse materials in the Mississippi River without authority, and by negligently installing a sewerage pipe in the bed of the river upstream from his property and in so doing leaving a rock abutment, which actions allegedly occasioned the deposit of wood chips and bark in the river in front of his property. He also seeks injunctive relief.

Jurisdiction was challenged. It is doubtful but the court denied motions to dismiss. Clerk's entries #44 and #54.

During trial the action as against Burlington Northern, Inc. and Gene M. Brink was, on stipulation, dismissed. Clerk's entries #61 and #62.

The Mississippi River, some 60 miles from its source, runs west to east through the Village of Grand Rapids. The defendant Blandin Paper Company operates a paper processing plant on the north bank of the river. It dumps its industrial waste into a manhole of the municipal waste system adjacent to its plant. In 1966 and 1967 a sewerage disposal plant was constructed by the Village. It included the laying of a 36 inch sewer pipe in the bed of the river below the Blandin plant and upstream from plaintiff's property. The plaintiff claims that in the construction the defendant left an abutment of rocks and stones in the river which caused a change in the location of the channel of the river which in turn directed waste materials to the north side of the river where plaintiff's restaurant building is located.

It is also claimed by plaintiff that the defendant Village dumped waste materials into the river at municipally constructed platforms on the north side of the river which waste also gathered in front of plaintiff's property. It is not disputed that the Village did dump snow into the river at this point. Plaintiff claims that foreign material and waste was in the snow.

The matter was tried to the court July 10, 11, 12 and 13 and September 5, 6 and 7, 1972. Many exhibits were received and numerous witnesses testified.

The theory of the defense was that the acts complained of just did not take place but that even if they did there is no causal connection between them and the resulting lodging of debris and bark in front of plaintiff's property. Defendants claim that the bark and debris was there for many years but it only showed up during times of low water. Defendants deny also that the value of plaintiff's property has been depreciated.

On the basis of the findings of fact and conclusions of law now to be stated, the court finds plaintiff's claims to be unsubstantiated.

Plaintiff purchased the riverfront property in 1953 for three hundred dollars. It was then unimproved low and swamp land upon which the Corps of Engineers had retained a perpetual flowage easement giving the United States Government perpetual right to flood plaintiff's property. He later placed fill consisting of wood chips, bark, and other fiberous material on the property. In 1961 plaintiff moved an older building onto the tract and after remodeling and making certain addi-

tions, rented the premises as a restaurant. The building has been vacant since 1971.

Blandin Paper Company's plant has been in its present location since before 1900. In approximately 1902, it constructed a power generating dam for the purpose of paper making which was situated in the same location as the present Blandin Dam. Prior to 1902 the United States Army Corps of Engineers constructed the Pokegama Dam some five to six miles upstream from the Blandin Dam. The purpose of the Pokegama Dam was to regulate and control the water levels in the Mississippi River. This is done by controlling the cubic feet per second of water discharged through its dam. The average cubic feet per second of water discharged through the Pokegama Dam during the past 87 years is 1,140. The Blandin Paper Company Dam has no water regulatory function and acts only as a conduit for the water passed through the Pokegama Dam.

In 1967 the Village of Grand Rapids initiated the construction of an industrial waste treatment plant which was designed, among other things, to treat and remove the suspended solids of the Blandin Paper Company operation which had prior thereto been discharged directly into the Mississippi River. Prior to 1967, the Blandin Paper Company discharged suspended solids into the Mississippi River at the rate of 40,000 pounds per day. The composition of the 40,000 pounds of suspended solids discharged was approximately half wood chips, bark and fiberous material, the remainder being papermaker's clay in solution. The plant became operational in February 1968 and thereafter Blandin Paper Company discharged its industrial wastes into the Village's waste treatment plant facility in return for which Blandin paid a user's fee for the Village's processing of Blandin's industrial waste.

In constructing the plant a 36 inch forced main was placed under the river about one mile downstream from the plaintiff's property. The forced main crossed the Mississippi River approximately 220 feet upstream from the building presently located on the plaintiff's property. It was placed in a trench approximately five feet beneath river bottom. Profiles of the river bottom taken by engineers in June 1972 show that the river bottom at the point of the forced main crossing was of approximately the same configuration as it was when the pipe was laid in 1967. Probings for the depth of the in-place pipe established that it is presently located some four to six feet beneath the river bottom at various points along its crossing.

Subsequent to the February 1968 start-up of the industrial waste treatment plant operation, certain difficulties were encountered which required the addition of a screening plant as part of the industrial waste treatment facility. A screening plant was constructed during 1969 and its construction required various intermittent discontinuances in the operation of the industrial waste treatment plant. During the periods of intermittent discontinuance of operation, the waste materials in the system were bypassed through an emergency gate directly into the Mississippi River. The industrial waste treatment plant became fully operational with the screening plant in place in February 1970. Since that time there has been only infrequent discharge of waste materials through the emergency bypass gate for only a few hours at a time during which periods emergency repairs were made.

There are no records establishing the amount or volume of discharge during the period of time when the screening plant was constructed because it is undisputed that the discharge through the bypass gate was intermittent. At all events, it has not been shown that these discharges caused deposits in front of plaintiff's property.

The industrial waste treatment plant is presently being operated pursuant to permits issued by the Minnesota Pollution Control Agency and the Environ-

mental Protection Agency and the operation is under the continuing direction and supervision of these agencies.

Defendants' expert testimony, which was corroborated by the observations over the years of many long time local residents who testified, establishes that the character, configuration, dimension and location of the river bed and river channel in front of plaintiff's property are the result of natural depositional and erosional processes which are unrelated to any activities of the defendants. There has been no substantial change in the river bed in front of plaintiff's property since 1967. During periods of low water, the river bed in front of the property has, for several decades, been exposed at about the same elevation and in the same configuration and dimension as exists at the present time. There has been no change in the river channel in front of plaintiff's property since 1967. The main channel has, for at least twenty years, been located near the south bank in the same configuration and depth as at present.

The character and composition of the material in front of plaintiff's property is primarily gray sand with some wood chips, bark and foreign materials. The wood chips are principally jack pine, the only hard pine native to Minnesota. Blandin Paper Company uses no jack pine or other hard pine in its paper making operation. The Village of Grand Rapids uses brown, not gray, sand to sand its streets and annually recovers all but 150 to 200 cubic yards of the brown sand which it does use. During average water flowage conditions of 1,140 cubic feet per second, the average depth of the water in front of plaintiff's property is approximately 30 inches. The average water depth has not changed since 1967.

The evidence fails to establish that the depositional materials in the river bed in front of plaintiff's property are the result of any of the activities of the defendants or that there has been any change in the location of the river channel in front of plaintiff's property.

The condition of the river bed in front of plaintiff's property has not affected its marketability for rental or sale purposes.

No written notice of damage was filed with the Village of Grand Rapids prior to commencement of this action. Such notice is probably a condition precedent to maintenance of this action, M.S.A. § 466.05, but at all events, the court decides the case on the merits as to both defendants.

The Court concludes that plaintiff has failed to establish by a preponderance of the evidence that any acts of either defendant constitute a violation of the Rivers and Harbors Act of 1899 or of Minnesota law which would entitle plaintiff to monetary damages or injunctive relief.

Defendants are awarded their costs and disbursements.

This expression is meant to comply with the requirements of Rule 52 of the Federal Rules of Civil Procedure.

Let judgment be entered accordingly.